**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

FILED
IN CLERK'S OFFICE

2025 JAN 13  PM 1: 13

U.S. DISTRICT COURT
DISTRICT OF MASS.

---

Dan Howitt,

                    Plaintiff,

v

CHA Cambridge Hospital,
Stacey Doe,
William Zinn,
Lorraine Vendetti,
Denise Peterson,
Judy Petelle,
Jane Doe 1,
Yamini Saravanan,
Sara Stoddard-Gunn,
Elizabeth Marcellino-Boisvert,
Stephania Hastings,
Dr. Wong,
Patient Relations Department,

                    Defendants.

---

**COMPLAINT**
**AND REQUEST FOR BENCH-TRIAL**

| | |
|---|---|
| 2 | PARTIES |
| 3 | JURISDICTION AND VENUE |
| 4 | BACKGROUND AT MIDDLESEX SUPERIOR COURT |
| 5 | INTRODUCTION |
| 6 – 16 | FACTS |
| 17 – 27 | CAUSES OF ACTION |
| 28 | REQUEST FOR BENCH-TRIAL |

1

**PARTIES**

| | |
|---|---|
| Plaintiff: | Dan Howitt |
| | 37 Bay State Road #5 |
| | Boston, MA 02215 |
| | |
| Defendants: | CHA Cambridge Hospital ("CHA") |
| | Stacey Doe ("Stacey") |
| | William Zinn ("Zinn") |
| | Lorraine Vendetti ("Vendetti") |
| | Denise Peterson ("Peterson") |
| | Judy Petelle ("Petelle") |
| | Jane Doe 1 ("Jane Doe 1") |
| | Yamini Saravanan ("Saravanan") |
| | Sara Stoddard-Gunn ("Gunn") |
| | Elizabeth Marcellino-Boisvert ("Boisvert") |
| | Stephanie Hastings ("Hastings") |
| | Dr. Wong ("Wong") |
| | Patient Relations Department ("Patient Relations Department") |
| | |
| | 1493 Cambridge Street |
| | Cambridge, MA 02139 |

(1)     Plaintiff:  I was a patient at CHA who received medical services and administrative services by the following defendants.

(2)     Defendant CHA is the hospital where I received medical care.

(3)     Defendant Stacey Doe was a medical-assistant and phlebotomist of CHA.

(4)     Defendant William Zinn was one of my primary-care physicians of CHA.

(5)     Defendant Lorraine Vendetti was the manager of the Patient Relations Department of CHA.

(6)     Defendant Denise Peterson was the manager of Risk Management & Patient Safety of CHA.

(7)     Defendant Judy Petelle was the manager of the Medical Specialties Department of CHA.

(8)     Defendant Jane Doe 1 was a medical-assistant and phlebotomist of CHA.

(9)     Defendant Yamini Saravanan was the clinical director of the Primary Care Department of CHA.

(10)    Defendant Sara Stoddard-Gunn was a mental health social worker of CHA.

(11)    Defendant Elizabeth Marcellino-Boisvert was a psychologist of CHA.

(12)    Defendant Stephanie Hastings was one of my primary care physicians of CHA.

(13)    Defendant Wong was one of my dentists of CHA.

(14)    Defendant Patient Relations Department is a department of CHA.

## JURISDICTION AND VENUE

Via USC 28 s1367(a), the court has supplemental jurisdiction over claims about violations of the below discussed MGL statutes, because those claims arise out of the same case or controversy as my federal claims.

Via USC 28 s1331, and due to the above, the court has jurisdiction over violations of the following statutes:

USC 42 s12182
MGL c272 s98
USC 42 s12203
MGL c265 s43A

Via the following, the court has jurisdiction over violations of MGL c272 s98:

*Currier v. National Board. of Medical Examiners*, 462 Mass. 1, 17 (2012)
*Folly-Notsron v. 180 Broadway Liquor Inc.*, No. 1:22-CV-11983-WGY, 2023 WL 3958453, at 8 (D. Mass. Apr. 27, 2023)
*Brooks v. Martha's Vineyard Transit Authority*, 433 F. Supp. 3d 65, 70 (D. Mass. 2020)

The court has jurisdiction over defamation that entails harm to the plaintiff.

Via USC 28 s1343, the court has jurisdiction over civil actions whose purposes are to recover damages for harm that was entailed by violations of the aforementioned statutes.

Via USC 42 s12181(7), the location of the incidents of this case is a place of public accommodation.

Via USC 28 s1391(b), the venue of the eastern division of the Massachusetts US District Court is proper because the incidents occurred in Boston, Massachusetts.

Via USC 42 c126 s12188, this court provides for presenting this complaint to, and requesting the assistance of, the Massachusetts Attorney General:

(a) Request for the Massachusetts Attorney General, per its obligation, to investigate the violations that are presented in this complaint, and to take part in my complaint, or initiate its own complaint against the defendant.
(b) In order to vindicate the public interest, assess a civil penalty against the defendant of up to $50,000 for the first violation, and up to $100,000 for each subsequent violation.
(c) Punitive damages

**BACKGROUND AT MIDDLESEX SUPERIOR COURT**

On 5/8/23, I first filed a complaint against the defendants in Middlesex Superior Court (2381CV01308); however at that time I was less familiar with how to construct complaints per civil-procedure; and despite my several improved amended-complaints to 5/2024, Judge Sarrouf, who seemed to ignore the following, declined them:

Documents filed by a pro se party are:

"to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up)

"the Court ignores statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements, takes the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and sees if they plausibly narrate a claim for relief." Sonoiki v. Harvard Univ., 37 F.4th 691, 703 (1st Cir. 2022) (cleaned up).

Fed. R. Civ. P. 8(e):

"Pleadings must be construed so as to do justice."

Moreover, in early 2024, the judge in a hearing stated that my complaint satisfied the requirements of civil-procedure, except for my causes-of-action section; and he asked that I write, for each cause of action, that I restate and reincorporate the preceding enumerated discussions that I provided. I however decided to re-write my facts section in a way that provided more detail; and due to encountering substantial disability symptoms, I was not able to improve the causes of action section as he asked. He then dismissed my amended complaint. And because I had done several amended complaints from 5/2023 onward, he dismissed with it prejudice. I filed a motion for reconsideration recently, in which I cite the above two case-laws and the above rule. He denied it.

I reconstructed my complaint here so that it hopefully better complies with civil-procedure in the sense of being more focused, clear, and succinct.

## INTRODUCTION

The hideousness of this case is that it is of hospital staff who engaged in violations of USC 42 s12182, MGL c272 s98, USC 42 s12203, and defamation, against me. It is widely assumed throughout the world that of all public places of society, a hospital is a rare place of immense compassion, especially toward those who have diagnosed chronic illnesses of any kind, including the mentally ill. The conduct of the defendants against me is ghastly sordid, and was done via calculated intention, and clearly on the presumption that I, as a disabled person, and with governmental medical insurance, would not know how to contend with the abuse via the law, nor have the courage, nor money, to do so. And as such, the psychological harm that I was, and continue to be, subjected to, is unusually severe and cruel. To explain, millions of persons like me world-wide have severely limited social lives, to the extent that suicide (or self-euthansia) is eventually considered to be the most humane way to discontinue our suffering, including suffering that is caused by social cruelty, including by family, school-peers, school-teachers, co-workers, passers by in public, staff at retail businesses, and even staff at hospitals. Because hospitals, and other medical contexts, are widely considered to be contexts of dignity that are apart from other contexts where cruelty against the mentally ill, and against other disabled persons, is prevalent, as Congress has observed (USC 42 s12101), when abuse against the mentally ill, in violation of federal law and state law, occurs in such contexts, the people who are subjected to the abuse may find the abuse of the hospital staff against them to be an authoritative justification that they should self-euthanize. That is, if even medical providers engage in such abuse, then there is no hope for an even minimally enjoyable life, many may conclude. The danger of being abused by hospital staff is extreme. And that such staff would engage in such abuse, including those who did so via calculated methods of passive mental violence, is of unusual sociopathy. I have done academic work in the Munchausen By Proxy field since 2016, including that one of my cases is presented in the eminent expert Dr. Marc Feldman's 2018 Routledge Press book *Dying To Be Ill*; and since 2021 I have been a co-editor of the Journal Of Autism & Developmental Disorders; and witnessing, and enduring, the abuse of the hospital staff, including of several high level administration staff, has been an atrocity to my life, and has repeatedly, despite my academic understanding of the matters, resulted in my encountering emotional devastation that has repeatedly threatened my life.

**FACTS**

(1)        I am diagnosed with marked (Type 1-2) Autism Spectrum Disorder (DSM-V, 299.00 (F84.0)), severe Major Depressive Disorder (DSM-V, 296.33 (F33.2)), and severe Post Traumatic Stress Disorder (DSM-5, 309.81(F43.10) caused by chronic disability-based social abuse. I receive SSI Disability Income, MassHealth Medicaid, Supplemental Nutrition Assistance Program, and a HUD Section 8 Voucher.

(2)        CHA is a private Massachusetts business that provides medical care, and related medical-administrative services, to the public.

(3)        The other defendants are medical providers, or hospital administrative providers, who, at the time of the violations, were employees/agents/representatives of CHA when they engaged in violations against me, which resulted in harm to me.

(4)        8/8/15: Stacey Doe, who was/is a medical-assistant, and who received my then-physician William Zinn's order for blood samples, engaged in the following discriminatory-based conduct against me:

(4a)        She, upon entering the room, and immediately after looking at me (I have an appearance of someone with marked Autism Spectrum Disorder), verbally accosted me by angrily yelling at me, "What are you doing?!", as I simple was standing and pacing slowly in the room while I was waiting for her,

(4b)        She subjected me to her using two contaminated medical gloves on her hands (both were contaminated by, first, one falling to the ground, which was sticky with filth, and her then picking it up it with her gloved hand; and she then used both gloves to begin handling and administering the equipment for the blood samples, which included sterile-gauze, an antiseptic wipe, needle-equipment, several vials, a tourniquet, and several areas of my harm).

(4c)        She removed all of the blood-draw equipment from my arm, and forgot to extract an additional vial of blood per Zinn's order.

(4d)        Upon realizing this, she loudly yelled "Fuck!" while 3 feet from me.

(4e)        I meekly and politely asked her if she should change her gloves because one fell to the ground, and because both are contaminated. I was too afraid to do so prior to this (regarding 4b).

(4f)        She severely looked at me, and sternly and angrily said "What!", and then looked to the ground, and back to my face, and to the ground, and back to my face, and said "I don't see a glove!".

(4e)        She then sternly and angrily said "Do you want me to take the other vial?!". And she immediately added, in a tone of severe apathy, "It doesn't matter!"; "I don't care!".

(4f)        I politely said that it is probably best to take it because Zinn ordered it.

(4g)        She angrily and hastily, while smacking various medical products to the table, began the above process of using the above equipment for a second blood sample.

(4h)        Her conduct is in violation of USC 42 s12182, and MGL c272 s98.

(4i)        Per USC 42 s12101, Congress finds that discriminatory abuse against the mentally ill is highly prevalent, and, rarely responded to via the legal system by the mentally ill, because of the widespread unfamiliarity with anti-discrimination and anti-retaliation federal law and state law, the lack of advocacy legal services for the mentally ill, and the typical inability of the mentally ill to afford legal services.

(4j)        I have been a co-editor of the leading autism medical and science journal, The Journal Of Autism & Developmental Disorders, since 2021.

(4k)        It is highly prevalent world-wide that persons who have Autism Spectrum Disorder are subjected to abuse upon other people visually experiencing their outward symptomology, such as blunted facial affect, intense eye gazes, over eye-contact, under eye-contact, fatigued eye gazes, monotone speech prosody, diminished non-verbal communication, etc.

(4l)        I observed Stacey to interact with other patients in the waiting room in a very polite way at all times, including patients who were before me.

(4l)        Her conduct with me was radically different.


**(5)**        8/8/16:  After the above occurred, I saw Zinn in the hallway, and informed him of the above, and he rapidly said "It doesn't matter".

(5a)        From that date to 8/16/16:  I sent Zinn a MyChart message about the above, and on 8/16/16 he told me that I should find a different physician, implying that decided to withdraw from being my physician.

(5b)        As such, he violated USC 42 s12203.

(5c)        Such retaliation, for my having reported to him the violation of USC 42 s12182 and MGL c272 s98 by Stacey, should be considered to be another form of a violation of USC 42 s12182 and MGL c272 s98: I invoke the following case-law, which applies to sex-discrimination, and ask that it be applied to my case (regarding disability-discrimination):

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).


**(6)**        Several times to 10/14/22, I informed my then primary-care physician Stephanie Hastings, including via email (we had some email exchanges, in addition to MyChart-message exchanges) of the above about Stacey.

(6a)        I emailed Hastings that given Stacey's conduct, I would likely audio and/or video my future appointments with other staff besides Hastings.

(6b)      10/14/22: I legally audio recorded my 8 minute 03 second visit with my second medical-assistant (Jane Doe 1), which was a visit for Hasting's blood-order.

(6c)      I politely informed Jane Doe 1 about the above about Stacey.

(6d)      She asked me for Stacey's last name, and I said that I could not remember.

(6e)      She then remembered it, told it to me, and asked me if that is her; and I said that I could not remember her last name.

(6f)      My visit with Jane Doe 1 went well from start to finish, including that, at the outset, she said that I have "very good veins" for a blood-draw; and we had a mutually polite interaction the entire time.

(6g)      1.5 years later (4/25/24), I was told by Saravanan (practice manager of the CHA primary care department), that Jane Doe 1 reported that I referred to her as "fat" during my visit with her.

(6h)      I legally recorded my 13 minute 42 second telephone call with Saravanan.

(6i)      I had an appointment with Hastings the next day (4/26/24), which was scheduled 1 month prior, to discuss various medical problems.

(6j)      Saravanan stated that I was "terminated" from the Primary Care Department, cancelled my appointment with Hastings, and obsessively reiterated a multitude of times that I had been "rude" "disrespectful" "unprofessional", "with staff", causing them "safety concerns", and was "terminated", and that "you called her fat" regarding Jane Doe 1, and that I asked her for the last name of Stacey Doe, and that this demonstrates that I am unable to "move on" from that past incident, and that this, as such, causes "staff" "safety concerns".

(6k)      I informed Saravanan that what Jane Doe 1 stated to her is false; and I conveyed 6c - 6f to her.

(6l)      As such, Saravanan violated USC 42 s12203 regarding my complaints about, and discussions about, Stacey's violations of USC 42 s12182 and MGL c272 s98.

(6m)      Such retaliation, for my having reported to her, and to Jane Doe 1 (who then conveyed my report to her), the violations of USC 42 s12182 and MGL c272 s98 by Stacey, should be considered to be another form of a violation of USC 42 s12182 and MGL c272 s98: I invoke the following case-law, which applies to sex-discrimination, and ask that it be applied to my case (regarding disability-discrimination):

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).


(7)      2015-2024: My several emailed requests to the hospital's Patient Relations Department for the full names of Stacey and Defendant Jane Doe 1, with the reason (notwithstanding that no reason is necessary per the below MGL) that I needed the names in order to proceed with Massachusetts State Board complaints against them, were not fulfilled, in violation of MGL c111 s70E(a).

(7a)        1/15/16:  Peterson of CHA's Patient Relations Department stated via email to me, as I demonstrate in my motion for equitable tolling, that if I proceeded with a lawsuit against CHA, or continued to contact CHA about Stacey, she (Peterson) would consider my doing so to be "harassment" (presumably criminal harassment), and as such would notify the police ("public safety"), and hospital-security, and I would be excluded from "Cambridge Health Alliance" (presumably all of the 37 CHA care-facilities in Massachusetts).

(7a1)       1/25/16:  Vendetti and Peterson, of CHA's Patient Relations Department, stated via a letter to me that they declined my request because of their "concern for the safety" of Stacey Doe, on the basis that I made my request for her name several times over several weeks, ignoring that each of my requests were not fulfilled,

(7b)        They added that I was engaging in "harassment", and that if it continued they would contact "Public Safety and Security".

(7c)        They added, regarding my request for the above names for my Massachusetts State Board complaints, that "the date of service and concern is enough information to report".

(7d)        They added that "We have a concern regarding your intentions", "You have left voicemails with the Patient Relations Office and Ms. Peterson that are concerning to us."

(7e)        My complaints to Vendetti and Peterson were professional and detailed; and I continued to convey my complaints to them because they did not abide by the above MGL c111 s70E(a).

(7f)        Prior to their concluding the above about me, Peterson left me a voicemail, after two weeks of my asking for the name of Stacey (in those two weeks I had to respond to her and Vendetti's arguments that "you do not need the name") in which she, when she said the full name of Stacey, said it in an abruptly rapid and inaudible way.

(7g)        I saved the voicemail.

(7h)        I then had to call and email Peterson again; and she did not respond for approximately two weeks, at which time she and Peterson embarked on the above 7b - 7e.

(7i)        In particular, and as a summary, they, via passive-aggressive abuse, over several weeks, would not return my calls, would not provide me with the requested name, and argue to me that I did not need the name.  And once Peterson left me a voicemail in which she, when she said the full name of Stacey, said it in an abruptly rapid and inaudible way, and then did not respond to my request for the name again for approximately two weeks.  And then when I continued to professionally and politely ask for the name, including professionally objecting to their refusal, and the above inaudible voicemail, they transitioned to conceiving of me, as I discuss above, as dangerous, and as, as such, a threat to the physical safety of various staff.  This is a system of calculated passive-abuse, that they used to violate MGL, and abuse me, including severely psychologically abuse me.  Surely if I was a non mentally ill person who had a career and family, they would have not embarked on the above abuse against me.

(7j)      Aside from MGL c111 s70E(a), there are dozens of "Patient Rights" literature-postings on walls throughout the hospital, on all floors of the hospital, such as in the waiting rooms of all departments, in the patient-registration room, in examination roomes, etc, and in CHA's website, stating what the MGL states, namely that all patients have the right to the names of anyone who provides them with medical care.

(7k)      Vendetti violated USC 42 s12182 and MGL c272 s98 by conceiving of my mental illness as portending that I would engage in criminal conduct against Stacey, and by mistreating on that basis.

(7l)      Peterson violated USC 42 s12182 and MGL c272 s98 by conceiving of my mental illness as portending that I would engage in criminal conduct against Stacey, and my mistreating on that basis.

(7m)      Vendetti violated MGL c111 s70E(a) as I discuss above.

(7n)      Peterson violated MGL c111 s70E(a) as I discuss above.


**(8)**      11/9/2022: I received medical care at CHA's Otolaryngology Department, with James Silva and Meghan Brady, regarding having been repeatedly assaulted by a child at a public park in Somerville - he spat in my face from inches away, twice over a few minutes, and screamed into my left ear, in the opening, after sneaking to my ear from behind me. I was enduring a substantial cough, auditory ringing, and a severe sore-throat. The boy had snot running down his face, and his parents who were 10 yards away did not intervene.

(8a)      I informed Silva and Brady of the above because I thought that it would be relevant in a medical context. I added to Silva, who I met with first before Brady, that I was considering filing a lawsuit against the parents for not intervening into the boy repeatedly assaulting me while I sat on a bench at the park.

(8b)      Silva while standing 6+ feet away, asked me to open my mouth, and in 1 second, rapidly raised his light, pointed it at my mouth, and lowered it, and said that everything is normal. I was immediately concerned that he was engaging in biased negligence.

(8c)      For decades, whenever physicians and other medical providers examine my throat, they do so by having their faces within inches of my mouth, and hold the flashlight even closer to my mouth, and then use a tongue depressor to expose the throat for visual examination more. This is the standard-of-care.

(8d)      Brady, during my auditory exam, could not tolerate that the hearing of my above left ear was considerably worse than my right ear, and interrupted my testing in the auditory room and asked me to be sure that I was responding to the sounds for my left ear.

(8e)      Via my aforementioned role as a co-editor of a medical and science journal, it is obvious that her intervention was based on bias, and is of malpractice (failure to abide by standard-of-care).

(8f)      The next day I went to CHA Somerville Urgent Care, and the physician assistant examined my throat properly, and diagnosed "acute viral nasopharyngitis".

(8g)        Shortly thereafter I was evaluated by an otorhinolaryngologist at Mt. Auburn Hospital, who diagnosed significant left ear hearing impairment.

(8h)        Both of the above confirmed the failed standard-of-care of Silva and Brady.

(8i)        2/1/23: I emailed a detailed professional complaint about Silva and Brady, via several emails in which I continued my complaint with additional discussion, to the medical-director of the department, Dr. Ayesha Khalid, and the chief-medical-officer of the hospital, Dr. Jeffrey Hoffman, and I included in my complaint that Silva and Brady may have engaged in disability-discrimination against me as a visibly mentally ill person.

(8j)        2/3/23: I submitted that complaint to the Patient Relations Department.

(8k)        2/6/23, at 1:25pm: I received a terrorizing anti mental illness voicemail, expressed in monstrous guttural voice, saying, "Yorrrrrrrrrrrr Craaaaaaaazyyyyyyyyy".

(8l)        The voicemail-source appeared as "Unknown Number".

(8m)        I thought that one of my then-current highly abusive landlords (1:24CV11991PBS) did this; and I subpoenaed the Legal & Emergency Response department of T-Mobile in Parsippany, NJ, via the Morris County Sheriff Civil Process

(8n)        The 8/28/23 result of the subpoena shows that the source of the voicemail is the home telephone number in Pepperell, MA of Judy Petelle, who is the practice-manager of 20+ years of the hospital's Medical Specialties Department, which is where the Otolaryngology Department is.

(8o)        I saved the voicemail.

(8p)        Each department of the CHA has access to my patient-profile, which lists all of my diagnoses, and in particular my aforementioned mental illnesses (as categorized by the DSM (Diagnostic & Statistical Manual Of Mental Disorders)).

(8q)        Via CHA's MyChart, I also have access to my patient-profile, which lists the above in a one-page summary.

(8r)        Clearly Petelle viewed my patient-profile.

(8s)        Even if she did not, her conduct was of anti mental illness disability discrimination: Via USC 42 s12101, Congress states:

"; others who have a record of a disability or are regarded as having a disability also have been subjected to discrimination."

At a minimum, she regarded me as having a disability; and discrimination on that basis is also disability-discrimination.

(8t)        Therefore Petelle violated USC 42 s12182 and MGL c272 s98.

(8u)        She also violated USC 42 s12203 because my complaint against Silva and Brady included my statements that they likely also engaged in disability-discrimination against me.

(8u)        3/27/23: I received a letter via MyChart that she "terminated" me from all of the departments of the Medical Specialties Department.

(8v)        Therefore Petelle violated USC 42 s12182 and MGL c272 s98 a second time.

(8v1)       And as such, she also violated USC 42 s12203, because my complaint against Silva and Brady included my statements that they likely also engaged in disability-discrimination against me.

(8w)        3/27/23: I spoke with the aforementioned medical-director of the Otolaryngology department, Ayesha Khalid, and she rescinded Petelle's termination.

(8x)        3/20/23: I received a MyChart notification that I was going to be postal-mailed a letter-of-termination by Petelle, but the notification did not provide any reasons for the termination.

(8y)        3/22/23: I emailed CHA's president Assaad Sayah and chief of medicine Richard Pels a professional email about this matter.

(8z)        Sayah replied with the following, and cc'd Pels:

"Thank you for having the courage to raise these concerns with me and others at Cambridge Health Alliance. I am sorry that you feel as you do about your experience at CHA
A core value of CHA is that we treat all patients with dignity and respect at all times. We do not tolerate any form of retaliation.
I am directing members of the CHA team to make further inquiries into the matters you have brought to my attention."


**(9)**        6/29/21: Via MyChart and in-person, and after having had an appointment with her, I asked my then mental health clinician, Sarah Stoddard-Gunn, per the requirement of McLean Hospital, to submit an application for partial hospitalization for me.

(9a)        She stated that she would.

(9b)        I emphasized to her, as I did to Hastings over many months, that I was in dire need of attending a partial hospitalization program due to extreme depression.

(9b1)       I conveyed to her in my first appointment the abuse of Stacey, and the ensuing abuse of the Patient Relations Department (Peterson and Vendetti).

(9c)        She did not reply to me for 3 full months (9/28/21), despite my several follow up MyChart messages and voice-mails to her.

(9d)        She MyChart messaged me that she was the McLean program was being conducted via webcam, asked if I have a computer with which I can do that, and stated that she learned of my complaint against Stacey and all of the problems that arose from that.

(9e)        I replied that I would obtain a webcam for the program.

(9f)        However, she never contacted me again, nor did anyone else at the hospital.

(9g)    12/2/22: I contacted CHA's Psychiatry Department, and was told that she "left her role" at the department for another role at the hospital; and I found that she is now also, in addition to being a social worker, the director of Urgent Care & Access Services.

(9h)    2/23/22: I contacted McLean Hospital's partial hospitalization program, and was informed that she did not submit an application to them.

(9i)    2/25/22: I had a 50 minute 14 second legally recorded telephone conversation with CHA psychologist Elizabeth Marcellino-Boisvert, which was my first appointment with her.

(9j)    She said several times, and with mocking derision, that Gunn did everything possible for me, and that I was not able to proceed with the McLean Hospital program because I did not have a webcam.

(9k)    I politely informed her that that is not true, and she responded with mocking derision, saying that Gunn told her this.

(9l)    Due to the aggressive mocking derision of Boisvert, and aggressive distrust of me, I was not comfortable to continue with her as my psychologist.

(9m)    3/9/22: Hastings (6 above), email-replied to me that she spoke with Gunn and Boisvert in the near-past, and that they conveyed to her they became aware of my problems with Stacey and the Patient Relations Department staff, including emails from, and a letter from, those staff about me. (A friend assisting me with my case in this court has assisted me with finding past emails in my three email accounts, and emails that I saved as pdf's in various computer folders and in one USB drive)

(9n)    It is apparent that Gunn's negligence of me, and Boisvert's aggressive derision of me (despite that I was trying to establish a clinical relationship with her in my first appointment with her), were done in retaliation to my complaints about Stacey, and likely in retaliation to how Stacey, as Hastings stated to me, was no longer permitted to work with patients at the hospital.

(9o)    Therefore, Gunn violated USC 42 s12203.

(9p)    Such retaliation, for my having reported to her the violations of USC 42 s12182 and MGL c272 s98 by Stacey, and for others reporting to her my complaints against Stacey, should be considered to be another form of a violation of USC 42 s12182 and MGL c272 s98: I invoke the following case-law, which applies to sex-discrimination, and ask that it be applied to my case (regarding disability-discrimination):

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

(9p)    Also therefore, Boisvert violated USC 42 s12203.

(9q)    Such retaliation, for my having reported to her the violations of USC 42 s12182 and MGL c272 s98 by Stacey, and for others reporting to her my complaints against Stacey, should be considered to be another form of a violation of USC 42 s12182 and MGL c272 s98: I invoke the following case-law, which applies to sex-discrimination, and ask that it be applied to my case (regarding disability-discrimination):

"Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action." Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005).

(9r)        Gunn and Hastings surely have never engaged in such conduct against others, and are known to be excellent clinicians.

(9s)        Both clearly wanted to dispose of me as a patient, and succeeded via their calculated conduct in doing so.

(9t)        Treating a severely mentally ill and highly vulnerable person like they did is atrocious.

(9u)        It is clear that both desired to not only dispose of me as a patient, but to severely harm me, via causing me to be without treatment, despite my dire circumstance. I assume both did not care if I self-euthanized.

**(10)**        Hastings was my primary-care doctor from 2/2021 until my termination from the Primary Care Department on 4/25/23.

(10a)        4/2/2022: Via MyChart, she stated that she would refer me to a "complex care specialist" to handle my case, given the nature of my case.

(10b)        However, she never did.

(10c)        Clearly this was in violation of USC 42 s12203, regarding my matter with Stacey: My medical circumstance warranted receiving that referral, and Hastings stated on her own accord that she would make the referral, but she never did, despite that making such a referral is a simple matter.

(10d)        Clearly Hastings elected to decide to not provide me with the referral in order to surreptitiously harm me.

(10e)        Moreover, clearly she desired to abuse me via passive-aggressive abuse by telling me that such a referral is warranted, and that she would make the referral, but then not doing so.

(10f)        Moreover, clearly she desired that my medical circumstance worsened without the proper treatment, including that I may euthanize myself.

(10g)        In early 2021, after I discussed Stacey with her during an appointment, she mentioned to me that Stacey no longer has access to working with patients, clearly per the decision of the CHA administration regarding my complaints against her, and perhaps others' complaints against her.

**(11)**        January 2020: I met with CHA Dental Services dentist Wong (although I may be mistaken about her last name), at the Windsor Street Care Center.

(11a)        The temporary filling for my #5 tooth fell out approximately 2.5 months prior, and the appointment was for a new filling.

(11b)        Due to not being able to afford paying for the required crown since 2010, I instead obtained one replacement filling in 2014, and this was to be my second one.

(11c)        All of my previous dentists (two in Portland, OR, and several in Cambridge, MA, including at Wong's office (CHA Dental Services)) since 2010, and since 2014 at CHA Dental Services, stated that due to the extremely minimal structure that was remaining from the previously fractured tooth, no drilling of any degree should be done.

(11d)        As was the case with Stacey, upon Wong entering the room and looking at me, she began to aggressively verbally abuse me, including angrily scolding me for not having the appointment 2.5 earlier as was previously scheduled, angrily asking me why I missed the appointment, and then upon my politely telling her that I contend with severe mental illness, staring at me viciously and opening her eyes widely as if she found me to be disgusting.

(11e)        All of the above, and below, was witnessed by her assistant.

(11f)        She proceeded to drill the above tooth substantially (intermittently over approximately five minutes), contrary to what I state in 11c.

(11f1)        After her first approximate ten seconds of drilling, I asked her why she was drilling, and I mentioned what I state in 11c; and she angrily said that she has to do some drilling for the filling.

(11f2)        When I had the first replacement filling done in 2014, no drilling was done.

(11f3)        According to all of the aforementioned dentists, no drilling was needed for the filling.

(11g)        She then stated that she was finished, and her assistant removed my protective glasses and bib.

(11h)        I then bit down, and was shocked that my upper and lower teeth in that area did not align, and instead that my lower teeth and jaw slid over several millimeters when I bit down, due to her having drilled away the surface of the #5 tooth in such a way that it no longer aligned with the tooth below.

(11i)        In substantial fear, I told this to her assistant, and I stood up to see Wong attending to a different patient in a different room across the hallway.

(11j)        The assistant told Wong of the problem, and she angrily said to her that she would return to me shortly.

(11k)        She clearly intentionally neglected to do the paper-alignment method that shows how the teeth are misaligned, and how to correct it, which was done with me by all of my previous dentists from my first root-canal in 2004.

(11l)        Akin to Stacey, her conduct was clearly of disability-discrimination in violation of USC 42 s12182 and MGL c272 s98: She observed my Autism Spectrum Disorder appearance, and not only immediately embarked on being verbally psychologically abusive toward me, but elected to intentionally harm me by doing what all other dentists over a multitude of years stated should not be done in any circumstance to that tooth.

(11m)        Within three weeks, that #5 tooth completely fractured while I was eating, causing substantial pain, because the fractured section remained in the tooth-socket, and any even minimal movement of the fracture caused immense pain.

(11n)        I had to have an emergency extraction of it; and due to the pandemic, there was a delay in obtaining an appointment.

(11n1)       Dr. Alec Eidelman of the same office as Wong (CHA Dental Services) is who did the emergency extraction of the fractured segment, as well as extraction of the underlying root-canal segments.

(11n2)       I told him of the above about how the tooth had been drilled away substantially prior to the filling being put in, and he stated that the tooth should have never been drilled to any extent because of the already very minimal structure.

(11o)        Due to how I was not able to afford a crown, I went 2.5 years with a missing tooth in that area, which had a poor appearance, which caused self-consciousness, and which entailed frequent injury to that gum area.

(11p)        The then-chief of the office, Dr. Lee, who did the dental-implant procedure on me, stated that the nature of the #5 area required a dental-implant, and he reduced the cost by 20% for me after I informed him of what Wong did.

(11q)        I paid 50% of the high cost myself because my insurance, MassHealth, did not provide any coverage.

(11r)        I had to have several appointments over substantial time for the dental-implant process.

(11s)        The succeeding chief of the office, Caleb Tam, given what I conveyed to him about Wong, was kind to waive the second 50% of the cost.

(11t)        Given the above about the delay in my obtaining a dental-implant, the gum/bone area above the tooth has a caved-in appearance, which occurs when there is no structure where the #5 tooth was.


(12)         As I discuss in (6), Jane Doe 1 violated USC 42 s12203, and via the additional violation of defamation, which caused substantial harm to me: She retaliated against my polite conveyance to her of the discriminatory abuse of her colleague Stacey by stating to one or more others at CHA that I referred to her (Jane Doe 1) as "fat", and, that I asked for Stacey's last name, which resulted in my being excluded from my place of primary care medical care.


(12-1)       The Patient Relations Department did not respond to my several professional requests for the name of Jane Doe 1, in violation of MGL c111 s70E(a).

(12-1a)      Clearly their basis to not respond to my request is their continued violations of Peterson and Vendetti violations of USC 42 s12182 and MGL c272 s98.

**CAUSES OF ACTION**

**COUNT 1**

13.     I restate, and reincorporate by reference, 1 – 12.

Stacey violated USC 42 s12182.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 2**

14.     I restate, and reincorporate by reference, 1 – 13.

Stacey violated MGL c272 s98.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 3**

15.     I restate, and reincorporate by reference, 1 – 14.

Zinn violated USC 42 s12203.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 4**

16.     I restate, and reincorporate by reference, 1 – 15.

Zinn violated USC 42 s12182.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 5**

17.     I restate, and reincorporate by reference, 1 – 16.

Zinn violated MGL c272 s98.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 6**

18.     I restate, and reincorporate by reference, 1 – 17.

Jane Doe 1 violated USC 42 s12203.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

e.  Additional orders and damages that the court may find are warranted.

**COUNT 7**

19.     I restate, and reincorporate by reference, 1 – 18.

Jane Doe 1 violated USC 42 s12182.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

e.  Additional orders and damages that the court may find are warranted.

### COUNT 8

20.    I restate, and reincorporate by reference, 1 – 19.

Jane Doe 1 violated MGL c272 s98.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

e.  Additional orders and damages that the court may find are warranted.

### COUNT 9

21.    I restate, and reincorporate by reference, 1 – 20.

Jane Doe 1 engaged in retaliatory defamation against me that caused me substantial harm.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

e.  Additional orders and damages that the court may find are warranted.

### COUNT 10

22.    I restate, and reincorporate by reference, 1 – 21.

Peterson violated USC 42 s12182.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

e.  Additional orders and damages that the court may find are warranted.

### COUNT 11

23.    I restate, and reincorporate by reference, 1 – 22.

Peterson violated MGL c272 s98.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

e.  Additional orders and damages that the court may find are warranted.

### COUNT 12

24.    I restate, and reincorporate by reference, 1 – 23.

Peterson violated MGL c111 s70E(a).

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

e.  Additional orders and damages that the court may find are warranted.

### COUNT 13

25.    I restate, and reincorporate by reference, 1 – 24.

Vendetti violated USC 42 s12182.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from engaging in such a violation against me and others.

e. Additional orders and damages that the court may find are warranted.

## COUNT 14

26.    I restate, and reincorporate by reference, 1 – 24.

Vendetti violated MGL c272 s98.

Due to this, I request the following relief:

a. Judgment on the violation.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from engaging in such a violation against me and others.

e. Additional orders and damages that the court may find are warranted.

## COUNT 15

27.    I restate, and reincorporate by reference, 1 – 26.

Vendetti violated MGL c111 s70E(a).

Due to this, I request the following relief:

a. Judgment on the violation.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from engaging in such a violation against me and others.

e. Additional orders and damages that the court may find are warranted.

## COUNT 16-17

28.    I restate, and reincorporate by reference, 1 – 27.

Petelle violated USC 42 s12182 twice.

Due to this, I request the following relief:

a. Judgment on the violation.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from engaging in such a violation against me and others.

e. Additional orders and damages that the court may find are warranted.

## COUNT 18-19

29.    I restate, and reincorporate by reference, 1 – 28.

Petelle violated MGL c272 s98 twice.

Due to this. I request the following relief:

a. Judgment on the violation.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from engaging in such a violation against me and others.

## COUNT 20-21

30.    I restate, and reincorporate by reference. 1 – 29.

Petelle violated USC 42 s12203 twice.

Due to this. I request the following relief:

a. Judgment on the violation.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from engaging in such a violation against me and others.

## COUNT 22

31.    I restate. and reincorporate by reference, 1 – 30.

Gunn violated USC 42 s12203.

Due to this. I request the following relief:

a. Judgment on the violation.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from engaging in such a violation against me and others.

## COUNT 23

32.    I restate. and reincorporate by reference. 1 – 31.

Gunn violated USC 42 s12182.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

## COUNT 24

33.  I restate, and reincorporate by reference, 1 – 32.

Gunn violated MGL c272 s98.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

## COUNT 25

34.  I restate, and reincorporate by reference, 1 – 33.

Boisvert violated USC 42 s12203.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

## COUNT 26

35.  I restate, and reincorporate by reference, 1 – 34.

Boisvert violated USC 42 s12182.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

### COUNT 27

36.     I restate, and reincorporate by reference, 1 – 35.

Boisvert violated MGL c272 s98.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

### COUNT 28

37.     I restate, and reincorporate by reference, 1 – 36.

Hastings violated USC 42 s12203.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

### COUNT 29

38.     I restate, and reincorporate by reference, 1 – 37.

Hastings violated USC 42 s12182.

Due to this, I request the following relief:

a.  Judgment on the violation.

b.  General damages.

c.  Punitive damages

d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

### COUNT 30

39.     I restate, and reincorporate by reference, 1 – 38.

Hastings violated MGL c272 s98.

Due to this, I request the following relief:

a.  Judgment on the violation.

   b.  General damages.

   c.  Punitive damages

   d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

### COUNT 31

40.    I restate, and reincorporate by reference, 1 – 39.

Wong violated USC 42 s12182.

Due to this, I request the following relief:

   a.  Judgment on the violation.

   b.  General damages.

   c.  Punitive damages

   d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

### COUNT 32

41.    I restate, and reincorporate by reference, 1 – 40.

Wong violated MGL c272 s98.

Due to this, I request the following relief:

   a.  Judgment on the violation.

   b.  General damages.

   c.  Punitive damages

   d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

### COUNT 33

42.    I restate, and reincorporate by reference, 1 – 41.

The Patient Relations Department violated MGL c111 s70E(a) regarding my request about Jane Doe 1.

Due to this, I request the following relief:

   a.  Judgment on the violation.

   b.  General damages.

   c.  Punitive damages

   d.  An injunction prohibiting the defendant from engaging in such a violation against me and others.

### COUNT 34

43.    I restate, and reincorporate by reference, 1 – 42.

The Patient Relations Department violated USC 42 s12182 regarding my request about Jane Doe 1.

Due to this, I request the following relief:

a. Judgment on the violation.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from engaging in such a violation against me and others.

## COUNT 35

44.    I restate, and reincorporate by reference, 1 – 43.

The Patient Relations Department violated MGL c272 s98 regarding my request about Jane Doe 1.

Due to this, I request the following relief:

a. Judgment on the violation.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from engaging in such a violation against me and others.

## COUNT 36

45.    I restate, and reincorporate by reference, 1 – 44.

Saravanan violated USC 42 s12203.

Due to this, I request the following relief:

a. Judgment on the violation.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from engaging in such a violation against me and others.

## COUNT 37

46.    I restate, and reincorporate by reference, 1 – 45.

Saravanan violated USC 42 s12182.

Due to this, I request the following relief:

a. Judgment on the violation.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from engaging in such a violation against me and others.

**COUNT 38**

47.    I restate, and reincorporate by reference, 1 – 46.

Saravanan violated MGL c272 s98.

Due to this, I request the following relief:

a. Judgment on the violation.

b. General damages.

c. Punitive damages

d. An injunction prohibiting the defendant from engaging in such a violation against me and others.

**COUNT 39**

48.    I restate, and reincorporate by reference, 1 – 47.

Petelle violated MGL c265 s43A via her hate-crime natured voicemail to me, and her concurrent pattern of a multitude of violations of USC 42 s12203, USC 42 s12182, and MGL c272 s98.

Due to this, I request the following relief:

a. Judgment on the violation.

b. Criminal charge.

c. General damages.

d. Punitive damages

e. An injunction prohibiting the defendant from engaging in such a violation against me and others.

**REQUEST FOR BENCH-TRIAL**

I request a bench-trial on the aforementioned violations.

Submitted by,

Dan Howitt
1/13/25

**CERTIFICATE OF SERVICE**
I served this document today to the defendant's attorney Vincent Dunn at vdunn@hmdrslaw.com.

Dan Howitt
1/13/25