UNITED STATES DISCTRICT COURT
DISTRICT OF MASSACHUSETTS

DAN HOWITT,

    Plaintiff,

    v.                                  CIVIL ACTION NO. 25-10100-MPK

CHA CAMBRIDGE HOSPITAL,

    Defendant.

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO DISMISS THE AMENDED COMPLAINT (#30)

KELLEY, U.S.M.J.

I. Introduction.

    *Pro se* Plaintiff Dan Howitt brings claims against the Defendant, CHA Cambridge Hospital ("CHA"), for employee actions that he alleges violated the Americans with Disabilities Act of 1990 ("ADA") and constituted defamation and intentional infliction of emotional distress. (#20 ¶¶ 39-47.) He also brings claims against the hospital for breach of contract and breach of the covenant of good faith and fair dealing. *Id*. ¶¶ 48-49.

    Pending before the Court is CHA's motion to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. (#30.) CHA's motion argues in the alternative for a more definite statement pursuant to Fed. R. Civ. P. 12(e), and for portions of the complaint that are immaterial to be stricken pursuant to Fed. R. Civ. P. 12(f). *Id*.

    CHA's motion to dismiss is ALLOWED as to all counts for failure to state a claim upon which relief may be granted because each of Mr. Howitt's claims is precluded by the principles of *res judicata*.

1

II. Background.

    A.  Procedural History.

        1)    Plaintiff's State Court Case.

The Court may take judicial notice of the Plaintiff's filings in other courts that are relevant to the matter at hand. *See Wiener v. MIB Grp., Inc.*, 86 F.4th 76, 81 n.3 (1st Cir. 2023) (citation omitted). On May 8, 2023, Mr. Howitt filed suit against CHA in Middlesex Superior Court (Docket No. 2381CV01308). (Defendant's Memorandum of Law #31 at 23.) He then filed an amended complaint on May 9, 2023, which is the operative complaint in his state court case.[1] *Id*. In his May 9 complaint, Mr. Howitt alleged that CHA employees engaged in defamation, medical malpractice, and disability discrimination against him, resulting in emotional distress. *Id.* at 38-50. Mr. Howitt filed several motions to further amend his state complaint, each of which was denied. *Id.* at 23-26. On February 14, 2024, CHA moved to dismiss Mr. Howitt's amended complaint under Mass. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. *Id.* at 26. On May 5, 2024, Judge Camille Sarrouf, Jr. of the Middlesex Superior Court granted CHA's motion, dismissing Mr. Howitt's case with prejudice. *Id.* at 27.

On May 28, 2024, Mr. Howitt filed a notice of appeal but failed to timely docket the appeal. *Id.* at 27-28. Mr. Howitt then failed to file a motion for leave to docket the appeal late, as instructed by an appeals court docket entry on October 2, 2024. *Id.* at 28. Mr. Howitt has thus seemingly abandoned his appeal of the state court case. *See id*. at 28-29. Mr. Howitt also filed two motions

---

[1] The amended complaint, filed on May 9, 2023, is the operative complaint in Mr. Howitt's state court case. (#31 at 23.) The Defendant's memorandum of law in support of its motion to dismiss incorrectly states that Mr. Howitt's amended complaint filed May 9, 2023, was denied. *Id.* at 1-2. Judge Sarrouf's June 12, 2023, order does not refer to the amended complaint filed May 9, 2023, which was allowed as a matter of course pursuant to Mass. R. Civ. P. 15(a). *Id*. at 23-24. Moreover, CHA's answer, filed June 13, 2023, responds to the May 9, 2023, amended complaint. *Id*. at 24.

for reconsideration on May 9, 2024, and on December 3, 2024, respectively. *Id.* at 27, 29. Both motions were denied by Judge Sarrouf, who found that none of the required circumstances warranting reconsideration pursuant to Mass. Sup. Ct. R. 9D were met. *Id.* at 28-29.

    2)    <u>Plaintiff's Federal Court Case.</u>

Mr. Howitt filed a complaint in federal court against CHA and several other defendants on January 13, 2025. (#1.) On July 6, 2025, Mr. Howitt filed a motion to amend the complaint, which was granted by the Court on November 5, 2025, as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1). (##10, 17.) Mr. Howitt filed an amended complaint on November 9, 2025, against only CHA. (#20.) The amended complaint filed on November 9 is the operative complaint in the present matter. *Id.* Mr. Howitt's amended complaint alleges that the actions of various CHA staff members violated the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12182, 12203, prohibiting disability discrimination by public accommodations and retaliation against an individual exercising their rights under the ADA. *Id.* ¶¶ 39-43. The amended complaint additionally includes allegations that CHA employees engaged in defamation and intentional infliction of emotional distress against Mr. Howitt, and he asserts claims against the hospital for breach of contract and breach of the covenant of good faith and fair dealing. *Id.* ¶¶ 44-49.

On March 20, 2026, CHA filed its motion to dismiss Mr. Howitt's complaint and a memorandum of law in support. (##30, 31.) On March 23, 2026, Mr. Howitt filed an opposition to CHA's motion to dismiss. (#33.)

B.  <u>Relevant Facts.</u>

Mr. Howitt's allegations arise out of interactions during his time as a patient at CHA from 2014 to 2024. (#20 at 1-4.) Mr. Howitt alleges that he has diagnosed Asperger's syndrome and depression for which he received mental health care at CHA beginning in 2014. *Id.* ¶¶ 1, 24.

    1)    <u>Care at CHA's Otolaryngology Department.</u>

    i.    <u>Interaction with James Silva.</u>

Mr. Howitt alleges that he visited physician assistant James Silva at CHA's Otolaryngology Department on November 9, 2022, to address symptoms he believes were related to a recent interaction with a child at a public park in Somerville. *Id*. ¶ 5. Mr. Howitt alleges that the child spat in his face and screamed in his left ear. *Id*. He told Mr. Silva about the incident, mentioning that he was considering filing suit against the parents of the child for failing to intervene. *Id.* ¶ 6. Mr. Howitt alleges that Mr. Silva then negligently examined his throat, spending only a second looking at it from 6 feet away before telling Mr. Howitt that his throat looked normal. *Id*. ¶ 7. Mr. Howitt alleges that he went to CHA Somerville Urgent Care the next day to have his throat re-examined, where he was diagnosed with acute viral nasopharyngitis. *Id*. ¶ 11.

    ii.    <u>Interaction with Meghan Brady.</u>

Mr. Howitt alleges that he was also evaluated by audiologist Meghan Brady on November 9, 2022, in connection with the above-mentioned incident at a public park in Somerville, which he described to Dr. Brady. *Id*. ¶¶ 5-6. Mr. Howitt alleges that Dr. Brady interrupted his auditory exam to ask him to be sure to respond to sounds in his left ear. *Id*. ¶ 9. Mr. Howitt alleges that he sought further evaluation at Mt. Auburn Hospital shortly after, where he was diagnosed with significant hearing impairment in his left ear. *Id.* ¶ 12.

    iii.    <u>Complaints Submitted Regarding Mr. Silva and Dr. Brady.</u>

On February 1, 2023, Mr. Howitt submitted a complaint about his interactions with Mr. Silva and Dr. Brady to Dr. Ayesha Khalid, Medical Director of CHA's Otolaryngology Department, and to Dr. Jeffrey Hoffman, Chief Medical Officer at CHA. *Id*. ¶ 14. On February 3, 2023, Mr. Howitt submitted a complaint to CHA's Patient Relations Department. *Id*. ¶ 15.

iv.  Interaction with Judy Petelle.

Mr. Howitt alleges that at 1:25 p.m. on February 6, 2023, he received a disturbing voicemail in which the caller called him crazy in a frightening voice. *Id.* ¶ 16. The call came from an unknown number, but he alleges that after subpoenaing T-Mobile's Legal & Emergency Response Department, he obtained the telephone number on August 28, 2023. *Id.* ¶¶ 17-19. He was then able to trace the number to Judy Petelle using a reverse telephone number search website. *Id.* ¶ 19. He alleges that Ms. Petelle is the practice manager of CHA's Medical Specialties Department, which houses the hospital's Otolaryngology Department, and that she had access to his patient profile and diagnoses. *Id.* ¶¶ 21, 23, 26.

Mr. Howitt further alleges that on March 20, 2023, he received a MyChart notification that he would be mailed a letter from Ms. Petelle terminating his care. *Id.* ¶ 33. On March 22, 2023, he emailed CHA President Assaad Sayah and CHA Chief of Medicine Richard Pels regarding the pending termination. *Id.* ¶ 34. Assaad Sayah replied, saying that members of the CHA team had been directed to make further inquiries into this matter. *Id.* ¶ 35. On March 27, 2023, Mr. Howitt received a letter from Ms. Petelle via MyChart indicating that she had terminated his care at CHA's Medical Specialties Department. *Id.* ¶ 30. His termination was rescinded the same day by Ayesha Khalid, Medical Director of CHA's Otolaryngology Department, after Mr. Howitt spoke with her via email and telephone. *Id.* ¶ 32.

2)  Care at CHA's Primary Care Department.

i.  Interaction with Jane Doe.

On October 14, 2022, an unnamed CHA medical assistant, referred to in the amended complaint as Jane Doe, performed a blood draw on Mr. Howitt. *Id.* ¶ 37. During this appointment, Mr. Howitt allegedly told Jane Doe about a prior blood draw at CHA on August 8, 2015, during

which he alleges he was subjected to disability discrimination by a different CHA medical assistant who he referred to in the complaint as Stacey Doe. *Id*. ¶¶ 36-37.

Mr. Howitt alleges that at some point before April 25, 2024, Jane Doe falsely reported to Dr. Yamini Saravanan, Practice Manager of CHA's Primary Care Department, that Mr. Howitt had called her fat during the October 2022 appointment.[2] *Id*. ¶ 37. Mr. Howitt emailed CHA's Patient Relations Department and conveyed to his primary care doctor that Jane Doe's claim was false and retaliatory. *Id*. ¶ 37a. He alleges that Jane Doe's record for this appointment did not reflect that he made that statement or acted rudely. *Id*. ¶ 37b.

### ii.   Termination by Dr. Saravanan.

Mr. Howitt alleges that on April 25, 2024, he was terminated from the Primary Care Department at CHA by Dr. Saravanan.[3] *Id*. ¶ 38. Dr. Saravanan allegedly stated that Mr. Howitt's termination was warranted by his behavior in connection with his complaints against Stacey Doe on August 8, 2015, Jane Doe on October 14, 2022, and staff of CHA's Rhinolaryngology Department in February and March of 2023.[4] *Id*. Dr. Saravanan allegedly stated that Mr. Howitt was rude, disrespectful, unprofessional, caused safety concerns for CHA staff, and that he had demonstrated an inability to move on from the prior interaction with Stacey Doe in 2015. *Id*.

---

[2] Mr. Howitt's operative federal complaint states that he was reported to have called Jane Doe fat sometime before his termination from the primary care department on April 25, 2024. (#20 at 3.) However, Mr. Howitt's operative state court complaint, filed May 9, 2023, recounts the same events as having occurred in April of 2023. (#31 at 41.) Thus, the actual date of Mr. Howitt's termination from the primary care department seems most likely to have been April 25, 2023, before the filing of his state court case, since the termination and events leading up to it were included in his operative state court complaint. *See id.*

[3] See above footnote.

[4] In paragraph 38 of the amended complaint Mr. Howitt mentions CHA's Rhinolaryngology Department in reference to events previously stated to have occurred at the Otolaryngology Department. (#20 ¶¶ 14, 32, 38.) Mr. Howitt likely meant to reference CHA's Otolaryngology Department throughout. *See id.*

III. <u>Legal Standard.</u>

To state a claim upon which relief may be granted, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Where it is clear from the face of the complaint and other documents subject to judicial notice that the action will not survive a common affirmative defense, the complaint fails to state a claim upon which relief may be granted. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (citations omitted); *Clemente Props., Inc. v. Pierluisi-Urrutia*, 165 F.4th 1, 11 (1st Cir. 2026) (citations omitted), *petition for cert. filed*, (U.S. June 25, 2026) (No. 25-1426).

*Res judicata* is a common affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), which prevents a plaintiff from bringing certain claims that the plaintiff litigated or could have litigated in an earlier action (claim preclusion) or from relitigating an issue actually decided in a litigant's prior case (issue prelusion). *See Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 411-12 (2020) (citations omitted).[5,6]

To determine whether Mr. Howitt's earlier state court action against CHA has preclusive effect on this action, the Court looks to the preclusion law of Massachusetts. *See Doe v. Town of Lisbon*, 78 F.4th 38, 48 n.4 (1st Cir. 2023) ("[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the

---

[5] Section III(A) of the Defendant's memorandum of law in support of its motion to dismiss asserts that the Plaintiff's claims are "[b]arred by the [d]octrine of *[r]es [j]udicata*/[c]ollateral [e]stoppel." (#31 at 4.) However, the Defendant makes no argument as to collateral estoppel, also known as issue preclusion. *Lucky Brand Dungarees, Inc.*, 590 U.S. at 411 (the terms "collateral estoppel" and "issue preclusion" have the same meaning and are used interchangeably). Because the Defendant's argument only analyzes the elements of claim preclusion, issue preclusion is not addressed in this opinion.

[6] The doctrine of *res judicata* "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Berrios v. Gonzalez-Rosario,* 630 F.3d 7, 11 (1st Cir. 2010) (alteration in original; footnote omitted) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).

judgment was rendered.") (alteration in original) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)). Thus, if under Massachusetts law the preclusive effect of the judgment against Mr. Howitt in his state action against the hospital would bar him from bringing the claims asserted in the present action, the claims are barred in this court. *Id.*

Under Massachusetts law, claim preclusion "makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." *Laramie v. Philip Morris USA Inc.*, 173 N.E.3d 731, 741 (Mass. 2021) (quoting *O'Neill v. City Manager of Cambridge*, 700 N.E.2d 530, 532 (Mass. 1998)). "Three elements must be established to show claim preclusion: '(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits.'" *Laramie*, 173 N.E.3d at 741 (quoting *DaLuz v. Dep't of Corr.*, 746 N.E.2d 501, 505 (Mass. 2001)). With respect to the second element, two causes of action are identical if the two actions "arose from the same transaction or series of connected transactions." *Laramie*, 173 N.E.3d at 745 (citations omitted). "A 'transaction' generally 'connotes a natural grouping or common nucleus of operative facts' . . . ." *Id.* at 745-746 (quoting Restatement (Second) of Judgments § 24 cmt. b (A.L.I. 1982)) (additional citation omitted). In making this determination, "[w]hether the facts are related in origin or motivation and whether they form a convenient trial unit are among the considerations." *St. Louis v. Baystate Med. Ctr., Inc.*, 568 N.E.2d 1181, 1185 (Mass. App. Ct. 1991) (citing Restatement (Second) of Judgments § 24(2) (A.L.I. 1982)).

IV. <u>Discussion.</u>

In his opposition to the Defendant's motion to dismiss, Mr. Howitt's sole argument is that "the judge accepted my response to her show cause order regarding the preclusion issue that she herself raised." (#33.) The Court did not issue an order accepting or denying Mr. Howitt's response.

The Court has not issued a decision regarding the preclusion issue to date, instead opting to consider fuller briefing from the parties. The Court's silence regarding this issue does not equate to acceptance of Mr. Howitt's argument. The Court's show cause order in this case states that the Plaintiff's failure to show cause *may* result in dismissal. (#6.) The fact that the Plaintiff's case has not been dismissed, however, does not indicate that he has successfully overcome the issue of preclusion. The Court now conducts a fulsome analysis of the claim preclusion issue in the context of the motion to dismiss.

The first and third elements of claim preclusion under Massachusetts law are readily satisfied on this record. *See Laramie*, 173 N.E.3d at 741 (quoting *DaLuz*, 746 N.E.2d at 505). With regard to the first element, the parties in the operative complaint in Mr. Howitt's state case are identical to those listed in the operative complaint in Mr. Howitt's federal case. (##31 at 38, 20 at 1.) As to the third element, Mr. Howitt's state claims were decided on the merits when Judge Sarrouf granted CHA's motion to dismiss Mr. Howitt's complaint pursuant to Mass. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, dismissing his case with prejudice. *See* (#31 at 102-105); Mass. R. Civ. P. 41(b)(3); *Isaac v. Schwartz*, 706 F.2d 15, 17 (1st Cir. 1983) (citations omitted) ("Under Massachusetts law, as elsewhere, a dismissal for failure to state a claim, under Mass. R. Civ. P. 12(b)(6), operates as a dismissal on the merits, *see* Mass. R. Civ. P. 41(b)(3), with res judicata effect."); *Mestek, Inc. v. United Pac. Ins. Co.*, 667 N.E.2d 292, 294 (Mass. App. Ct. 1996) (citations omitted) (holding that the plain language of Mass. R. Civ. P. 41(b)(3) indicates that dismissal for failure to state a claim is an adjudication on the merits).

The second element of claim preclusion under Massachusetts law is also satisfied here. Although Mr. Howitt asserts different claims in his federal case than he asserted in his state case, namely the ADA and contract claims, his new claims are precluded because they arise out of the

same series of connected transactions as his state claims. *See Baby Furniture Warehouse Store, Inc. v. Meubles D&F Ltee*, 911 N.E.2d 800, 806 (Mass. App. Ct. 2009) (quoting *Charlette v. Charlette Bros. Foundry, Inc.*, 793 N.E.2d 1268, 1277 (Mass. App. Ct. 2003)) ("With respect to the second element, claim preclusion will apply even though a party is prepared in a second action to present different evidence or legal theories to support his claim or seeks different remedies."); *Laramie*, 173 N.E.3d at 745 (citations omitted) (holding two causes of action identical if arising from the same series of connected transactions).

Mr. Howitt's federal claims arise out of two series of transactions. (#20 ¶¶ 39-49.) The first involves his care at CHA's Otolaryngology Department beginning in November 2022 through his short-lived termination from the department in March of 2023. *Id*. ¶¶ 5-35. The second involves his care at CHA's Primary Care Department beginning in August 2015 through his termination from the department in April of 2024. *Id*. ¶¶ 36-38. Each of these series of transactions also forms the basis of Mr. Howitt's state court claims. (#31 at 38-50.) Because Mr. Howitt could have brought all of these claims, state and federal, in his initial suit in state court, claim preclusion applies to each of his federal claims. *See Baby Furniture Warehouse Store, Inc.*, 911 N.E.2d at 806-07 (citations omitted) (holding claim preclusion as barring all claims that could have been brought in prior litigation); *Tafflin v. Levitt*, 493 U.S. 455, 458-459 (1990) (citations omitted) (noting that state courts enjoy a presumption of concurrent jurisdiction with that of federal courts over claims arising under federal law). The doctrine of claim preclusion is intended to avoid piecemeal litigation of this exact sort. *See Laramie*, 173 N.E.3d at 745 (quoting *Bagley v. Moxley*, 555 N.E.2d 229, 232 (Mass. 1990)) ("Plaintiffs are 'not entitled to pursue their claim[s] . . . through piecemeal litigation, offering one legal theory to the court while holding others in reserve for future litigation should the first theory prove unsuccessful.'") (alteration in original).

Had new material facts occurred since the disposition of Mr. Howitt's state case, those facts might potentially give rise to additional claims that would survive preclusion. *Compare Kobrin v. Bd. of Registration in Med.*, 832 N.E.2d 628, 634-635 (Mass. 2005) (holding that neither claim preclusion nor issue preclusion barred the Board of Registration in Medicine from revoking petitioner's license to practice based on new convictions that had not existed during prior related proceedings in which the board had dismissed the matter) *and Davenport v. Dennisport Partners, LLC*, No. 11 MISC 456318(AHS), 2013 WL 6731037, at *10 (Mass. Land Ct. Dec. 20, 2013) (holding new issues and facts raised that could not have been litigated in prior case were not barred by claim preclusion), *aff'd*, 31 N.E.3d 76 (Mass. App. Ct. 2015) *and Dyer v. Bilotta*, No. 942802, 2002 WL 31677186, at *3 (Mass. Super. Ct. Oct. 9, 2002) (holding claims based on new facts demonstrating a change in circumstance since prior final judgment not barred by claim preclusion) *with Saade v. Wilmington Tr., Nat'l Ass'n*, 232 N.E.3d 1192, 1195 (Mass. 2024) (citations omitted) (holding claims barred by claim preclusion when no new facts alleged that could not have been brought in prior lawsuit). However, the facts in the operative complaints of each of Mr. Howitt's state and federal cases are nearly identical, and any new facts allegedly occurred before the disposition of Mr. Howitt's state case. (##20, 31 at 38-50.) All but one incident included in his operative federal complaint are discussed in his prior operative state complaint. (##20, 31 at 38-50.) In his operative federal complaint, Mr. Howitt alleges that on February 6, 2023, he received a disturbing voicemail in which an unknown caller called him crazy in a frightening voice, and that he was later able to identify the caller as CHA employee Judy Petelle after receiving the phone number from T-Mobile via subpoena on August 28, 2023. (#20 ¶¶ 16-19.) He further alleges that Ms. Petelle is the practice manager of CHA's Medical Specialties Department, which houses the hospital's Otolaryngology Department, and that she had access to his patient profile and diagnoses.

11

*Id.* ¶¶ 21, 23, 26. Mr. Howitt's federal complaint asserts claims that this voicemail was a form of disability discrimination in violation of 42 U.S.C. § 12182 (Count 1), a form of retaliation for complaints about Mr. Silva and Dr. Brady in violation of 42 U.S.C. § 12203 (Count 2), and that by leaving the voicemail, Ms. Petelle intentionally subjected him to "substantial psychological distress" (Count 7). *Id.* ¶¶ 39-40, 45.

Although the voicemail incident was not included in the operative complaint of Mr. Howitt's state case, Mr. Howitt's voicemail-related claims do not overcome claim preclusion in his federal case because the voicemail incident was part of a series of connected transactions that formed the basis of his prior state claims, and he could have raised the claims in that case. *See Laramie*, 173 N.E.3d at 745 (citations omitted); *Baby Furniture Warehouse Store, Inc.*, 911 N.E.2d at 806-07 (citations omitted); *Tafflin*, 493 U.S. at 458-459 (citations omitted). Mr. Howitt's own allegation that the voicemail was left in retaliation for his complaints regarding Mr. Silva and Dr. Brady suggests that it was a part of a series of connected transactions that were the subject of his prior case, and that these facts would sensibly be grouped together at trial because of their relation in origin and motivation. *See* (#20 ¶¶ 29, 40); *Laramie*, 173 N.E.3d at 745-46 (citing Restatement (Second) of Judgments § 24 cmt. b (A.L.I. 1982)); *Baystate Med. Ctr., Inc.*, 568 N.E.2d at 1185 (citing Restatement (Second) of Judgments § 24(2) (A.L.I. 1982)). While Mr. Howitt did not receive the results of his subpoena to T-Mobile until August 28, 2023, three months after the operative state complaint was filed, his state case was not dismissed until nine months later, in May of 2024. (#20 ¶ 19, #31 at 23, 27.) He had ample time to amend his state complaint to include allegations related to the voicemail, which he did in fact try to do by filing amended complaints dated October 2, 2023, and January 30, 2024. (#31 at 25-26, 77, 91.) However, Judge Sarrouf denied each of his motions to amend on January 2, 2024, and February 5, 2024, respectively, for

failure to comply with pleading standards set out in rules 8 and 15 of the Massachusetts Rules of Civil Procedure. *Id*. at 26, 81-84. Thus, Mr. Howitt had the opportunity to raise the voicemail-related allegations, and did in fact raise them, in his prior state case before it was dismissed. *Id*. at 25-27, 77, 81-84, 91. Mr. Howitt's avenue to challenge his denied motions to amend would have been to file a timely appeal in state court rather than bring a new action in federal court. *See Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 47 (1st Cir. 2012) ("We have little doubt that the SJC would adopt the conventional rule that normally a failure to appeal from a denial of a motion to add a claim precludes the later assertion of such a claim in a new action."); *Osserman v. Jacobs*, 339 N.E.2d 193, 195-196 (Mass. 1975) (citations omitted) (holding in the context of demurrers that a plaintiff who has been granted leave to amend but whose amendment has failed to state a cause of action is not permitted to try again via a new action); *Korn v. Paul Revere Life Ins. Co.*, 984 N.E.2d 882, 888 (Mass. App. Ct. 2013) (citations omitted) (holding a claim realized during the course of an original lawsuit which could have been timely amended into the original suit as barred from being brought in future suits). This is exactly the sort of duplicative litigation that the doctrine of *res judicata* is intended to prevent. *See Laramie*, 173 N.E.3d at 741 (citations omitted).

Based on the above analysis, all counts in Mr. Howitt's present case are barred by *res judicata*. Each count thus fails to state a claim upon which relief may be granted, and the Court does not reach CHA's arguments in the alternative.

V. <u>Conclusion.</u>

For the above reasons, the Defendant's motion to dismiss (#30) is ALLOWED as to all counts of the Plaintiff's amended complaint.

July 28, 2026                                    /s/ M. Page Kelley
                                                M. Page Kelley
                                                United States Magistrate Judge